**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RITTENHOUSE PLAZA, INC.**<br>**1901-1905 Walnut Street**<br>**Philadelphia, PA 19103**<br>***Plaintiff,***<br>**v.**<br><br>**ARCH INSURANCE COMPANY**<br>**Harborside 3, 210 Hudson Street,**<br>**Jersey City, NJ 07311**<br>***Defendant.*** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **2:26-cv-06690**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Rittenhouse Plaza, Inc. ("Plaintiff" or "RPI"), by and through its undersigned counsel, files this Complaint against Defendant, Arch Insurance Company ("Defendant" or "Arch") in the above-captioned matter and, in support thereof, alleges as follows:

## I. INTRODUCTION

1. This action arises from Arch's failure to provide a defense and indemnity to RPI as required by and under the terms of a commercial general liability ("CGL") insurance policy, Policy No. 11GPP8958500 (the "Policy"), issued to non-party Hunter Roberts Construction Group, LLC ("Hunter Roberts") and in which RPI is named as an "additional insured." A copy of the Policy is attached as **Exhibit 1**.

2. RPI was sued in an underlying action, *Philip E. Tetlock and Barbara A. Mellers v. Hunter Roberts Construction Group, LLC, et al.,* Case ID No. 23-0601242 (Phila.CCP filed June 3, 2023) (the "Underlying Lawsuit"), which involved claims by two shareholders and residents of RPI against RPI, and against certain contractor defendants for tort damages caused by, *inter alia*, Hunter Roberts and its concrete subcontractor, non-party Carson Concrete Corp. ("Carson"). A

copy of the complaint (the "Underlying Complaint") filed in the Underlying Lawsuit is attached as **Exhibit 2**.

3. RPI has incurred over one million dollars in costs defending the Underlying Lawsuit which Arch, as Hunter Roberts' insurance carrier (and RPI's insurer), was obligated to defend and indemnify.

4. By way of this Complaint, RPI seeks compensatory damages against Arch for breach of contract, compensatory, consequential, and punitive damages for fraudulent concealment, and punitive damages and attorneys' fees pursuant to Pennsylvania's Insurance Bad Faith Statute, 42 Pa. C.S. § 8371.

## II. THE PARTIES

5. RPI is a Pennsylvania corporation with its principal place of business located at 1901-1905 Walnut Street, Philadelphia, Pennsylvania 19103.

6. Arch is a Missouri corporation with its principal place of business located at Harborside 3, 210 Hudson Street, Jersey City, NJ 07311.

7. At all times, Arch acted, in part, through its third-party administrator, non-party Gallagher Bassett. Gallagher Bassett's actions described herein are imputed upon Arch.

8. At all times relevant Arch was licensed and registered to write CGL policies of insurance in Pennsylvania, including the Policy.

## III. JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because RPI and Arch are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Philadelphia, Pennsylvania.

## IV. FACTUAL BACKGROUND

11. Plaintiff RPI, a housing cooperative, owns a historic pre-war apartment building located at 1901-05 Walnut Street in the Rittenhouse Square area of the City of Philadelphia, called the Rittenhouse Plaza Apartments ("Rittenhouse Plaza").

12. Constructed circa 1925, the building became a cooperative in 1994 and has remained a cooperative since.

13. 1911 Walnut Street LLC ("1911 Walnut"), a non-party, is the owner of certain parcels located at 1907-15 Walnut Street and 1904-40 Sansom Street in Philadelphia, and planned to develop those parcels into a forty-eight (48) floor high-end, mixed-use residential skyscraper (condominiums and apartments), called the Laurel (the "Laurel").

14. The proposed construction of The Laurel, adjacent to the Rittenhouse Plaza, foreseeably created a risk of damage to the Rittenhouse Plaza as well as a risk of injury to its occupants, because it was being constructed next to the Rittenhouse Plaza and would tower over it, with only a narrow strip of land separating it.

15. To address the concerns of RPI pre-construction, 1911 Walnut agreed that the Laurel's General Contractor, Hunter Roberts, and any subcontractors, such as Carson, would carry commercial general liability policies of insurance that name RPI as an "additional insured."[1]

---

[1] Under Pennsylvania law, being named as an "additional insured" on a CGL insurance policy provides direct, independent coverage rights that are separate from any underlying contractual indemnification obligations between the parties. *See Twp. of Springfield v. Ersek*, 660 A.2d 672

16. On July 15, 2021, during the construction of The Laurel, tubes used to form concrete columns ruptured showering the entire Rittenhouse Plaza with wet concrete particles.

17. Hunter Roberts and Carson, jointly and severally, were responsible for the concrete spill, and both were named defendants in the Underlying Lawsuit.

18. Unit Owners within the Rittenhouse Plaza, Philip E. Tetlock and Barbara A. Mellers, husband and wife, filed the Underlying Lawsuit against, *inter alia*, RPI.

19. Thereafter, upon information and belief, a timely claim was submitted to Arch seeking a defense and coverage in the Underlying Lawsuit for both Hunter Roberts and RPI as an additional insured under the Policy.

20. Upon information and belief, Arch, through its third-party administrator, non-party Gallagher Bassett, accepted the claim and then submitted the claim on behalf of Hunter Roberts and RPI to Carson's CGL insurance carrier, National Union and AIG. As proof of the submission of the claim from Arch to AIG/National Union, attached as **Exhibit 3** is a copy of a letter from AIG/National Union to Gallagher Bassett accepting the tender of the claim.

21. Upon information and belief, the tender of this claim from Arch to National Union/AIG was pursuant to an indemnification provision in a subcontract between Hunter Roberts and Carson, to which RPI is not a party.

22. Any such agreement between Hunter Roberts and Carson, however, has no impact on Arch's independent duty to defend and indemnify RPI as an "additional insured" under its Policy.

---

(Pa. Commw. Ct. 1995); *Frederick Mut. Ins. Co. v. DN Constr. LLC*, 2026 Phila. Ct. Com. Pl. LEXIS 13 (C.C.P. Phila. 2026). An additional insured is entitled to the exact same coverage under the policy as the named insured. *See Miltenberg & Samton, Inc. v. Assicurazioni Generali, S.p.A.*, 2000 Phila. Ct. Com. Pl. LEXIS 79 (C.C.P. Phila. 2000).

23. This action represents an admission by Arch that it had a duty under its Policy to provide a defense and indemnity to both Hunter Roberts and RPI as an additional insured.

24. The date on the letter attached as Exhibit 3 is October 27, 2023. RPI, however, did not receive notice of the letter (or the actions described therein) on that date because Arch, failed to disclose this and other correspondence regarding (i) Arch's duty to defend and indemnify RPI in the Underlying Litigation, and (ii) AIG/National Union's agreement to provide a defense to RPI in the Underlying Litigation.

25. In fact, RPI never received notice of this letter (Exhibit 3), Arch's acknowledgement of its duty to defend and indemnify RPI, or AIG/National Union's agreement to provide a defense to RPI in the Underlying Litigation until February 2026.

26. After tendering the claim to National Union/AIG, Arch, without justification, abdicated its duty to defend and indemnify RPI, leaving RPI defenseless in the Underlying Litigation.

27. Arch's misconduct and malfeasance did not end with failing to defend and indemnify RPI pursuant to the Policy.

28. Arch intentionally concealed from RPI that AIG/National Union had accepted the tender of the claim and acknowledged their duty to defend RPI and provide it with a funded defense in the Underlying Lawsuit.

29. Arch did so while ensuring that its own insured, Hunter Roberts, had legal counsel paid for by an insurance carrier pursuant to the duty to defend Hunter Roberts in the Underlying Lawsuit.

30. Arch failed to ensure that RPI—to whom it owed an independent duty to defend in the Underlying Lawsuit as an "additional insured" under its Policy—had legal counsel paid for by insurance.

31. RPI, left undefended by Arch and other insurers, was forced to pay for private counsel to defend it in the Underlying Lawsuit.

32. The attorneys and law firms retained to defend Hunter Roberts and Carson ("Insurance Counsel") from the initiation of the Underlying Lawsuit through settlement of that litigation, were fully aware that RPI was funding its own defense because other insurance carriers had refused to provide a defense and coverage to RPI.

33. During a mediation, attended by counsel for all parties named in the Underlying Lawsuit as well as the parties to a subrogation claim involving RPI's property insurer's efforts to recover damages caused to the RPI property, Insurance Counsel engaged in settlement discussions with RPI's counsel. At no time during those discussions did Insurance Counsel disclose to RPI's counsel either that (i) Arch owed a defense (and likely indemnity) to RPI, or that (ii) at Arch's request, National Union/AIG acknowledged in writing that they owed RPI, at the very least, a defense to the Underlying Lawsuit. These are material facts Arch, through itself, its third-party administrator, and Insurance Counsel had a duty to disclose, especially given that Insurance Counsel was trying to extract a general release from RPI, which would have extinguished any claim RPI had against Arch.

34. Upon information and belief, Arch was at all times monitoring the Underlying Lawsuit and mediation because as the purported excess insurer to the AIG/National Union

insurance policy, it would be responsible to provide coverage over $1,000,000,[2] and the demand by the Tetlock/Mellers was $1,200,000.

35. To date, RPI has incurred substantial legal fees and related expenses in the defense and settlement of the Underlying Lawsuit.

## A. The Policy

36. The Policy provides for the defense and indemnification of RPI by Arch for claims asserted against its insured for damages "because of" either "bodily injury" or "property damage."

37. The Policy covers not only claims seeking payment to repair property damage, but also suits in which a third-party seeks damage "because of" property damage: "We [Arch] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." Policy, § 1, Coverage A, 1.a.

38. "'Property damage' means: a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." *Id.*

## The Legal Landscape

39. Under long-standing Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584 (2010); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317

[2] The AIG/National Union insurance policy was limited to $1,000,000 per occurrence.

(2006); *General Acc. Inc. Co. of America v. Allen*, 547 Pa. 693 (1997); *J.H. France Refractories v. Allstate Ins. Co.*, 534 Pa. 29 (1993).

40. The duty to defend is triggered by the allegations in the complaint and is resolved in favor of the insured when there is any ambiguity or potential for coverage. *See Erie Ins. Exch. v. Moore,* 658 Pa. 256 (Pa. 2020).

41. An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. *See Babcock & Wilcox Co. v. Am. Nuclear Insurers,* 131 A.3d 445, 456 (Pa. 2015); *See also Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987) (describing the duty to defend as arising "whenever the complaint filed by the injured party may potentially come within the coverage of the policy"); *Gedeon v. State Farm Mut. Auto. Ins. Co*., 410 Pa. 55 (1963) (describing same legal principle).

42. The complaint need only contain "one allegation that falls within the scope of the policy's coverage for the duty to defend to be triggered." *Vitamin Energy, LLC v. Evanston Ins. Co.,* 22 F.4th 386, 394 (3d Cir. 2022).

43. Under this legal landscape, Arch knew, after reviewing the Underlying Complaint and the Policy, that it had a duty to defend RPI as an Additional Insured.

44. It simply failed to provide such a defense to RPI as an Additional Insured, withheld material information regarding AIG/National Union when it had an obligation to disclose same, and failed to communicate with RPI.

## V. CAUSES OF ACTION

**COUNT I – BREACH OF CONTRACT**

45. RPI repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46. The Policy sets forth contractual obligations on the part of Arch to provide a defense and indemnity to RPI when claims are made against RPI as an additional insured that satisfy the terms of the Policy.

47. Arch also had a duty to communicate with RPI as an additional insured to the Policy.

48. RPI has complied with all terms and conditions of the Policy.

49. The allegations set forth against RPI in the Underlying Complaint fall within the scope of insurance under the Policy.

50. Arch has cited no exclusion that would preclude coverage of RPI under the Policy.

51. In fact, it tacitly acknowledged its duty to defend and indemnify by tendering the claim submitted to itself, Arch, to National Union/AIG, which it did only by virtue of the subcontract between Hunter Roberts and Carson.

52. This tender, however, did not absolve Arch from its own duty to defend and indemnify RPI as an additional insured under the Policy, especially when it knew that National Union/AIG had failed to defend RPI.

53. Arch's breaches of the Policy have caused RPI to incur significant damages.

**COUNT II – FRAUDULENT CONCEALMENT**

54. RPI repeats and realleges the allegations set forth in paragraphs 1 through 52 of this Complaint as those fully set forth herein.

55. Arch knew that it had a duty to defend RPI in the Underlying Lawsuit.

56. Arch knew that, after tendering the claim to National Union/AIG, that those entities had acknowledged that they had a duty to defend RPI in the Underlying Lawsuit.

57. Rather than disclose that it (or National Union/AIG) had a duty to defend RPI and would enter a defense on its behalf, Arch, with the fraudulent intent to deceive, remained silent, fully aware that RPI was paying out-of-pocket to defend the claims asserted against it in the Underlying Litigation.

58. Arch had an obligation and duty under the Policy and the law to disclose to RPI, that as an additional insured under the Policy, it was entitled to a defense. Wrongfully, and in bad faith, Arch, when it had a duty to speak, decided to remain silent, hopeful that RPI would never discover that National Union/AIG or it had a duty to defend and indemnify.

59. Arch's material misrepresentations and fraudulent concealment have caused RPI to incur substantial damages.

**COUNT III – BAD FAITH (42 Pa. C.S. § 8371)**

60. RPI repeats and realleges the allegations set forth in paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61. Arch owed contractual and legal duties to RPI under the Policy, including but not limited to the duty to communicate, the duty to provide a defense, and the duty to indemnify covered losses.

62. Arch breached its duties by failing to provide a defense (and indemnity) to RPI after knowing that it had a duty to do so; failing to ensure that AIG/National Union provided a defense (and indemnity) to RPI after requesting that AIG/National Union do so; failing to communicate and to communicate timely its and AIG/National Union's acknowledged duties under the Policy to RPI, to RPI's material detriment;

63. Arch's actions constitute bad faith conduct under 42 Pa. C.S. § 8371, including but not limited to:

a. Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

b. Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

c. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed and communicated to the company or its representative.

d. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

e. Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons.

*See* 40 P.S. § 1171.5(a)(10)(iv);

64. Arch's conduct was knowingly reckless, willful, and in bad faith, as demonstrated by its disregard for the clear language of the policy and its duties under Pennsylvania law.

65. As a result of Arch's bad faith conduct, RPI has suffered damages including, but not limited to defense costs, indemnity exposure, legal fees, delay damages, and other consequential harm.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Rittenhouse Plaza, Inc., prays for judgment as follows:

a. As to Count I, the entry of a monetary judgment in favor of Plaintiff and against Defendant for an amount in excess of $75,000.00, including compensatory damages for its covered losses, pre- and post- judgment interest thereon, and attorneys' fees and costs in an amount to be determined;

b. As to Count II, the entry of a monetary judgment in favor of Plaintiff and against Defendant for an amount in excess of $75,000.00, including compensatory, consequential, and punitive damages, pre- and post-judgment interest thereon, and attorneys' fees and costs in an amount to be determined; and

c. As to Count III, the entry of a monetary judgment in favor of Plaintiff and against Defendant for an award and interest on the amount of Plaintiff's claim from the date the claim was made by Plaintiff in an amount equal to the prime rate of interest plus 3%, punitive damages against Defendant and an assessment of court costs and attorneys' fees against Defendant.

Respectfully submitted,

**REIDENBACH & ASSOCIATES, LLC**

Dated: September 4, 2026

By: ______________________________

Robert A. Korn, Esq. (PA ID 09229)
Melissa A. Anderson, Esq. (PA ID 308178)
Devon Square 1
725 W. Lancaster Ave., Ste. 215
Wayne, PA 19087
*rkorn@reidenbachlaw.com*
*melissa@reidenbachlaw.com*
***Counsel for Plaintiff,***
***Rittenhouse Plaza, Inc.***